SHEPPARD, MULLIN, RICHTER & HAMPTON LLP
  A Limited Liability Partnership
  Including Professional Corporations
PAUL S. COWIE, Cal Bar No. 250131
JULIA G. REMER, Cal Bar No. 330559
Four Embarcadero Center, 17th Floor
San Francisco, California 94111-4109
Telephone:    415.434.9100
Facsimile:    415.434.3947
E mail: pcowie@sheppardmullin.com
        jremer@sheppardmullin.com

JACKSON LEWIS P.C.
Benjamin J. Schnayerson Cal Bar No. 257857
Jimmy Macias, Cal Bar No. 287027
50 California Street, 9th Floor
San Francisco, California 94111-4615
Telephone: 415.394.9400
Facsimile: 415.394.9401
E-mail: ben.schnayerson@jacksonlewis.com
        jimmy.macias@jacksonlewis.com

Attorneys for GOLFTEC Management, LLC

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RONALD LI, an individual, on behalf of himself and on behalf of all persons similarly situated,<br><br>            Plaintiff,<br><br>      v.<br><br>GOLFTEC MANAGEMENT LLC, a Limited Liability Company, and DOES 1 through 50, inclusive,<br><br>            Defendant. | Case No.  24-cv-1678<br><br>[*Removed from San Mateo Superior Court Case 23-CIV-02883*]<br><br>**DEFENDANT GOLFTEC, MANAGEMENT LLC'S NOTICE OF REMOVAL OF ACTION (CLASS ACTION FAIRNESS ACT)**<br><br>Complaint Filed:  June 26, 2023<br>Trial Date: None Set |

**TO THE CLERK OF THE ABOVE-ENTITLED COURT, PLAINTIFF AND HIS ATTORNEYS OF RECORD:**

PLEASE TAKE NOTICE that Defendant GOLFTEC Management, LLC ("Defendant") hereby removes the action *Ronald Li, et al. v. Golftec Management LLC, et al.*, pending in the Superior Court of California, County of San Mateo, Case No. 23-CIV-02883, to the United States District Court for the Northern District of California.  Removal is based on the Class Action Fairness Act ("CAFA").  This Court has original subject matter jurisdiction over Plaintiff Ronald Li's ("Plaintiff") lawsuit under 28 U.S.C. §§ 1332(d), 1441, 1453, and 1446, because it is a proposed class action, minimal diversity exists, and the amount in controversy exceeds $5,000,000.  Accordingly, removal is proper based on the following grounds:

## I.    STATEMENT OF JURISDICTION UNDER CAFA

1.    This Court has jurisdiction over this case under the Class Action Fairness Act, 28 U.S.C. section 1332(d), and this case may be removed pursuant to the provisions of 28 U.S.C. section 1441(a), in that it is a civil class action wherein: (1) the proposed class contains at least 100 members; (2) the defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity of citizenship between at least one class member and one defendant.

2.    Each of the foregoing conditions were satisfied at the time this action was initiated and now at the time of removal.

## II.    CLAIMS AND PROCEDURAL HISTORY

3.    On or about June 26, 2023, Plaintiff filed a putative class action complaint against Defendant in the Superior Court of the State of California, County of San Mateo, Case No. 23-CIV-02883 (the "Complaint").  On August 15, 2023, Plaintiff served a copy of the Complaint and Summons and other accompanying documents on Defendant.  Attached hereto as **Exhibits A-G** are true and correct copies of the: Class Action Complaint (**Exhibit A**); Summons (**Exhibit B**); Civil Case Cover Sheet (**Exhibit C**); Case Management Order #1 and affidavit of mailing (Exhibit **D**); Notice of Assignment For All Purposes (**Exhibit E**); Designation as Complex Case, Setting of a Case Management and Trial Setting Conference, and Complex Fees Due (**Exhibit F**); Civil Trial

1   Management Rules, ADR Information, Stipulation to Use ADR, San Mateo FAQ's, and CM-110

2   Form (**Exhibit G**).  On August 25, 2023, Plaintiff filed a Proof of Personal Service of the

3   Complaint and Summons and other accompanying documents.  Attached hereto as **Exhibit H** is a

4   true and correct copy of Plaintiff's Proof of Personal Service.

5       4.    On or about September 14, 2023, Defendant filed its Answer to the Complaint in

6   San Mateo County Superior Court.  Attached hereto as Exhibit **I** is a true and correct copy of

7   Defendant's Answer to Plaintiff's Complaint (the "Answer").

8       5.    Plaintiff's Complaint asserts claims arising out of Plaintiff's employment with

9   Defendant for: (1) Violation of California Business and & Professions Code §§ 17200, *et seq*.

10  (Unfair Competition); (2) Violation of California Labor Code §§ 1194, 1197, and 1197.1 (Unpaid

11  Minimum Wages); (3) Violation of California Labor Code §§ 510 and 1198 (Unpaid Overtime);

12  (4) Violation of California Labor Code §§ 226.7 and 512 (Failure to Provide Meal Periods); (5)

13  Violation of California Labor Code §§ 226.7 and 512 (Failure to Provide Rest Periods); (6)

14  Violation of California Labor Code § 226 (Non-Compliant Wage Statements); (7) Violation of

15  California Labor Code § 2802 (Unreimbursed Business Expenses); (8) Violation of California

16  Labor Code §§ 201-204, 233, 246 (Sick Pay Wages); (9) Violation of California Labor Code §§

17  201, 202, and 203 (Wages Not Timely Paid Upon Termination); (10) Discrimination and

18  Retaliation in Violation of FEHA; (11) Violation of Labor Code § 1102.5; (12) Wrongful

19  Termination in Violation of Public Policy.

20      6.    Plaintiff's Complaint is styled as a putative class action under Code of Civil

21  Procedure § 382.  Plaintiff seeks to represent a putative class of "all individuals who are or

22  previously were employed by DEFENDANT in California, including any employees staffed with

23  DEFENDANT by a third party, and classified as nonexempt employees (the 'CALIFORNIA

24  CLASS') at any time during the period beginning four (4) years prior to the filing of this

25  Complaint and ending on the date as determined by the Court ('CALIFORNIA CLASS

26  PERIOD')." ("Putative Class").  (Complaint, ¶ 4.)  Within the Putative Class, Plaintiff also seeks

27  to represent "all members of the CALIFORNIA CLASS who are or previously were employed by

28  DEFENDANT in California, including any employees staffed with DEFENDANT by a third

party, and classified as non-exempt employees (the 'CALIFORNIA LABOR SUB-CLASS') at any time during the period three (3) years prior to the filing of the complaint and ending on the date as determined by the Court (the 'CALIFORNIA LABOR SUB-CLASS PERIOD') pursuant to Cal. Code of Civ. Proc. § 382." ("Subclass") (*Id*, ¶ 40.) Plaintiff seeks to certify the Subclass as to the Second, through Ninth causes of action.

7.     On or about September 21, 2023, Plaintiff served Defendant with an Initial Case Management Conference Statement.  Attached hereto as Exhibit **J** is a true and correct copy of Plaintiff's Case Management Statement.

8.     On or about September 25, 2023, Defendant filed a Case Management Statement with the Superior Court of California for the County of San Mateo.  Attached hereto as Exhibit **K** is a true and correct copy of the Defendant's Case Management Statement.

9.     On or about September 29, 2023, a Case Management and Trial Setting Conference was held in Courtroom 8A of the Superior Court of California for the County of San Mateo. Attached hereto as **Exhibit L** is a true and correct copy of the Superior Court of California for the County of San Mateo's Minute Order for the Case Management and Trial Setting Conference.

10.     On or about October 10, 2023, the Superior Court of California for the County of San Mateo served Plaintiff and Defendant with a Notice of Complex Case Management Conference, setting a Complex Case Management Conference for February 2, 2024.  Attached hereto as **Exhibit M** is a true and correct copy of the Notice of Complex Case Management Conference**.**

11.     On or about January 26, 2024, Plaintiff and Defendant filed a Joint Complex Case Management Statement with the Superior Court of California for the County of San Mateo. Attached hereto as **Exhibit N** is a true and correct copy of the Joint Complex Case Management Statement.

12.     On or about February 2, 2024, a Complex Case Management Conference was held in Courtroom 8A of the Superior Court of California for the County of San Mateo.  A further Case Management Conference was set for May 31, 2024.  Attached hereto as **Exhibit O** is a true and

correct copy of the Superior Court of California for the County of San Mateo's Minute Order for the Complex Case Management Conference.

13.     On February 14, 2024, Plaintiff served Defendant with notice that the Court set a further Case Management Conference for May 31, 2024.  Attached hereto as **Exhibit P** is a true and correct copy of Plaintiff's February 14, 2023 Notice.  On February 15, 2023, Plaintiff served Defendant with a revised notice that the Court set a further Case Management Conference for May 31, 2024.  Attached hereto as **Exhibit Q** is a true and correct copy of Plaintiff's February 15, 2023 Notice.

14.     On February 22, 2024, the Superior Court of California for the County of San Mateo served Plaintiff and Defendant with a Notice of Complex Case Management Conference, setting a Complex Case Management Conference for May 31, 2024.  Attached hereto as **Exhibit R** is a true and correct copy of the Notice of Complex Case Management Conference**.**

15.     On February 29, 2024, Plaintiff filed a Notice of Related Case with the Superior Court of California for the County of San Mateo.  Attached hereto as **Exhibit S** is a true and correct copy of the Notice of Related Case.

16.     On March 5, 2024, Defendant filed a Response to Plaintiff's Notice of Related Case and accompanying documents with the Superior Court of California for the County of San Mateo. Attached hereto as **Exhibits T-V** are true and correct copies of the: Response to Plaintiff's Notice of Related Case (**Exhibit T**); Declaration of Julia G. Remer in Support of Defendant's Response to Plaintiff's Notice of Related Case (**Exhibit U**); and Notice Regarding Defendant's Response to Plaintiff's Notice of Related Case (**Exhibit V**).

17.     On March 12, 2024, Plaintiff filed a Response Opposing Defendant's Response to Defendant's Response to Plaintiff's Notice of Related Case and accompanying documents with the Superior Court of California for the County of San Mateo.  Attached hereto as **Exhibits W-Y** are true and correct copies of the: Response Opposing Defendant's Response to Plaintiff's Notice of Related Case (**Exhibit W**); Declaration of Victoria B. Rivapalacio in Support of Plaintiff's Response Opposing Defendant's Response to Plaintiff's Notice of Related Case (**Exhibit X**); and

Proof of Service Re Plaintiff's Response Notice Regarding Defendant's Response to Plaintiff's Notice of Related Case (**Exhibit Y**).

18.    **Exhibits A-Y** are true and correct copies of all process, pleadings, and orders served upon Defendant or filed by Defendant in accordance with 28 U.S.C. § 1446(a).  A copy of this Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of California for the County of San Mateo.  No other proceedings have been held in this action.

## JURISDICTION UNDER CLASS ACTION FAIRNESS ACT

19.    The Court has original jurisdiction over this action under the Class Action Fairness Act of 2005 ("CAFA"), codified in relevant part at 28 U.S.C. § 1332(d).  As set forth below, this action is removable under CAFA, pursuant to the provisions of 28 U.S.C. §1441(a), as (1) the proposed class contains at least 100 members; (2) Defendant is not a state, state official or other governmental entity; (3) the total amount in controversy for all class members exceeds $5,000,000; and (4) there is diversity between at least one class member and one defendant.

20.    Pursuant to *Dart Cherokee Basin Operating Co., LLC v. Owens*, 135 S. Ct. 547 (2014) and 28 U.S.C. § 1446(a), Defendant is not required to submit evidence establishing jurisdictional facts with a notice of removal.  Defendant is only required to submit a "short and plain statement of the grounds for removal."  28 U.S.C. § 1446(a).  A plausible allegation of the relevant jurisdictional facts is sufficient in a notice of removal.  *Dart Cherokee*, 135 S.Ct. 547 at 554.  Evidence is required only if the plaintiff contests, or the Court questions, Defendant's allegations.  *Id.*

## MINIMUM DIVERSITY EXISTS

21.    CAFA's minimal diversity requirement is satisfied when: (1) at least one plaintiff is a citizen of a state in which none of the defendants are citizens; (2) at least one plaintiff is a citizen of a foreign state and one defendant is a U.S. citizen; or (3) at least one plaintiff is a U.S. citizen and one defendant is a citizen of a foreign state.  *See* 28 U.S.C. § 1332(d).

22.    Although no *evidence* of domicile is required at the notice of removal stage (*cf. Dart Cherokee*, 574 U.S. at 84), "[p]roof of residence in a state is usually thought *prima facie* evidence of domicile."  *Bradley Min. Co. v. Boice*, 194 F.2d 80, 84 (9th Cir. 1951); *see also Anderson v.*

*Watt*, 138 U.S. 694, 706 (1891) ("The place where a person lives is taken to be his domicile until facts adduced establish the contrary…"); *Barbosa v. Transp. Drivers, Inc.*, 2015 WL 9272828, at *2 (C.D. Cal. 2015) ("a person's residence is prima facie evidence of his or her place of domicile for purposes of diversity jurisdiction") (quoting *Bey v. SolarWorld Indus. Am., Inc.*, 904 F. Supp. 2d 1103, 1105 (D. Or. 2012)).  Regardless, an allegation of the parties' citizenship is sufficient for removal.  *Ehrman v. Cox Communs., Inc.*, 932 F.3d 1223 (9th Cir. 2019) (allegation of plaintiff's citizenship is sufficient for removal).  Furthermore, "a party with the burden of proving citizenship may rely on the presumption of continuing domicile, which provides that, once established, a person's state of domicile continues unless rebutted with sufficient evidence of change." *Mondragon v. Capital One Auto Fin.*, 736 F.3d 880, 885 (9th Cir. 2013).

23.    <u>Plaintiff's Citizenship</u>:  Upon information and belief, Plaintiff is a resident of, domiciled in, and a citizen of California.  The Complaint alleges that Plaintiff was employed and worked in California.  (Complaint, ¶ 3.)  Defendant's records also show that Plaintiff was a resident of California during his employment with Defendant.  The Complaint further alleges that Plaintiff purports to represent classes of individuals "who are or previously were employed by DEFENDANT *in California*" therefore asserting that the putative class members are also California residents, both at the time the action was initiated and now at the time of this removal. (Complaint, ¶¶ 4, 30, 40) (emphasis added).  Therefore, at the date on which this civil action was filed, and at the time of this removal, at least one member of the putative class was a citizen of California and not a citizen of Colorado.

24.    <u>Defendant's Citizenship</u>:  For the purposes of CAFA, a limited liability company is deemed to be a citizen of the states under whose laws it is organized and of the state where it has its principal place of business.  28 U.S.C. § 1332(d)(10); *Ferrell v. Express Check  Advance of SC LLC*, 591 F.3d 698, 699-700 (4th  Cir. 2010); *see also Jack v. Ring LLC*, 553 F. Supp. 3d 711, 714–15 (N.D. Cal. 2021); *Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1032 n.12 (9th Cir., 2009) ("CAFA abrogates the traditional rule that an unincorporated association shares the citizenship of each of its members for diversity purposes") (Kleinfeld, J. concurring).

25.    In *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010), the Supreme Court clarified the definition of an entity's "principal place of business" and concluded that "'principal place of business' is best read as referring to the place where a[n entity]'s officers direct, control, and coordinate the corporation's activities." The Supreme Court further clarified that, "in practice" the principal place of business "should normally be the place where the [entity] maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination." *Id.* at 93.

26.    Defendant is a limited liability company organized under the laws of Colorado, and maintains its principal place of business in Colorado. Defendant's corporate headquarters are located in Colorado, and its administrative functions (including operations and planning) are conducted in Colorado. Defendant's corporate and executive officers are employed in Colorado and the actual direction, control, and coordination for Defendant take place in Colorado. These facts were true at the time the action was instituted, and remain true today at the time of removal to federal court. Thus, under the foregoing standard Defendant is a citizen of Colorado for purposes of removal, and not a citizen of California.

27.    The presence of "Doe" defendants has no bearing on diversity with respect to removal. *See* 28 U.S.C. § 1441(b). Regardless, pursuant to CAFA, Defendant is not required to obtain the consent of any other defendant to remove this action. 28 U.S.C. § 1453(b).

## THE PROPOSED CLASS CONTAINS AT LEAST 100 MEMBERS

28.    Defendant employed approximately **167** putative class members who worked at least one day in California during the four-year period prior to the filing of the Complaint. Accordingly, the putative class meets CAFA's requirement of a class containing at least 100 members.

## THE AMOUNT IN CONTROVERSY EXCEEDS $5,000,000

29.    Pursuant to CAFA, the amount in controversy is satisfied when the aggregated claims of the individual members in a class action exceed the sum of $5,000,000. *See* 28 U.S.C. § 1332(d)(6). A defendant is not obliged to "research, state, and prove the plaintiff's claims for damages." *McCraw v. Lyons*, 863 F. Supp. 430, 434 (W.D. Ky. 1994). A defendant can establish

the amount in controversy by setting forth a plausible allegation in the notice of removal that the amount placed in controversy by Plaintiff exceeds the jurisdictional minimum. *See Dart Cherokee*, 135 S. Ct. at 554 (holding that "a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold" and evidentiary submissions are required only if "the plaintiff contests, or the court questions, the defendant's allegations"). "In measuring the amount in controversy, a court must 'assume that the allegations of the complaint are true and assume that a jury [will] return[] a verdict for the plaintiff on all claims made in the complaint.'" *Kenneth Rothschild Tr. v. Morgan Stanley Dean Witter*, 199 F. Supp. 2d 993, 1001 (C.D. Cal. 2002) (quoting *Jackson v. American Bankers Ins. Co. of Florida*, 976 F. Supp. 1450, 1454 (S.D. Ala. 1997). "The ultimate inquiry is what amount is put 'in controversy' by the plaintiff's complaint, not what a defendant will *actually* owe." *Muniz v. Pilot Travel Centers LLC*, 2007 WL 1302504, at *3 (E.D. Cal. 2007) (original emphasis); *see also Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1148 (C.D. Cal. 2010) ("In deciding the amount in controversy, the Court looks to what the plaintiff has alleged, not what the defendants will owe.").

30.     In the Ninth Circuit, the amount in controversy is determined "at the time of removal." *Kroske v. US Bank Corp.,* 432 F.3d 976, 980 (9th Cir. 2005) (quoting *Singer v. State Farm Mut. Auto. Ins. Co.*, 116 F.3d 373, 376 (9th Cir. 1997). In *Chavez v. JPMorgan Chase*, 888 F.3d 413, 417 (9th Cir. 2018), the Ninth Circuit held "[t]hat the amount in controversy is assessed at the time of removal does *not* mean that the mere futurity of certain classes of damages precludes them from being part of the amount in controversy." *Chavez*, 888 F.3d at 417 (original emphasis). *Chavez* held that "the amount in controversy is not limited to damages incurred prior to removal— for example, it is not limited to wages plaintiff-employee would have earned before removal (as opposed to after removal). Rather, the amount in controversy is determined by the complaint operative at the time of removal and encompasses all relief a court may grant on that complaint if the plaintiff is victorious." *Id.* at 414-15. These principles were affirmed again by the Ninth Circuit in *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785 (9th Cir. 2018).

31.     Plaintiff's pleadings in this action fail to affirmatively disclose the amount in controversy or information from which Defendant could readily ascertain the amount in controversy without independent investigation and analysis.  Plaintiff's pleadings are "indeterminate" as to whether federal jurisdiction under 28 U.S.C. § 1332(d) existed within the meaning of *Harris v. Bankers Life & Cas. Co.*, 425 F.3d 689 (9th Cir. 2005) and *Roth v. CHA Hollywood Med. Ctr., L.P.*, 720 F.3d 1121 (9th Cir. 2013).

32.     Here, Defendant alleges there is more than $5,000,000 in controversy, not including costs and/or interest sought by Plaintiff.  Defendant provides the following calculations only to demonstrate that the amount in controversy in this case exceeds the jurisdictional amount in controversy under CAFA jurisdiction.  Defendant makes no admission of any liability or damages with respect to any aspect of this case, or to the proper legal test to be applied to Plaintiff's claims.  Nor does Defendant waive its right to ultimately contest the proper amount of damages due, if any, should Plaintiff prevail with respect to any of his claims.

33.     As set forth above, Plaintiff seeks to certify the "CALIFORNIA CLASS," of all nonexempt employees employed by Defendant during the period of time beginning four (4) years prior to the filing of the Complaint through the date as determined by the Court. ("Putative Class") (Complaint, ¶ 4.)  Plaintiff seeks to "fully compensate" himself and the Putative Class for their losses caused by Defendant's "unlawful, unfair and deceptive business practice" of retaining wages owed to Plaintiff and the Putative Class "due to meal and rest period violations, failure to pay compensation due, and failure to page wages timely upon termination." (*Id.*, ¶ 5.)

34.     Furthermore, Plaintiff alleges that his claims "are typical of the claims of each member of the CALIFORNIA CLASS" and that "all factual, legal, statutory, declaratory and injunctive relief issues that are raised in this Complaint are common to the CALIFORNIA CLASS will apply to every member of the CALIFORNIA CLASS."  (Complaint, ¶ 36 (b-c).)

35.     Plaintiff seeks to recover, on behalf of himself and the Putative Class, unpaid wages and penalties for Defendant's alleged failure to pay minimum and overtime wages, failure to provide meal and rest breaks, failure to reimburse business expenses, failure to provide sick wages, failure to pay all wages due upon resignation or termination of employment, and unfair

business practices.  (Complaint, Prayer for Relief.)  Plaintiff also seeks attorneys' fees and costs for all causes of action.  (*Id.*)

36.    Defendant independently determined based on its own business records that Plaintiff's proposed Putative Class is comprised of approximately 167 current and former employees in California during the four-year period prior to the filing of the Complaint.

37.    Defendant independently determined based on its own business records that Putative Class members worked a total of approximately 16,548 workweeks during the four-year period prior to the filing of the Complaint until February 21, 2024.  Defendant independently determined based on its own business records that during the relevant time period, Defendant paid the Putative Class an average hourly rate of approximately $19.00.

38.    <u>Unpaid Minimum Wages and Overtime Wages</u>:  Plaintiff alleges that Defendant requires Plaintiff and the Putative Class members ("PCMs") to work without paying them for all of the time they are under Defendant's control.  (Complaint, ¶ 8.)  Specifically, Plaintiff alleges that Defendant, "as a matter of established company policy and procedure, administers a uniform policy of rounding the actual time worked and recorded" by Plaintiff and the PCMs that is always to the benefit of Defendant, so that during the course of their employment, Plaintiff and PCMs are paid less than they would have been paid for actual recorded time.  (*Id.*)  Additionally, Plaintiff alleges that Defendant engages in a practice of requiring Plaintiff and the PCMs to work off-the-clock, without paying them for all of the time they worked under Defendant's control.  (*Id.* ¶¶ 8, 13.)  Accordingly, Plaintiff and the PCMs "forfeit minimum wage, overtime wage compensation, and off-duty meal breaks by working without their time being correctly recorded and without compensation at the applicable rates."  (*Id.*)

39.    <u>Alleged Unpaid Minimum Wages</u>:  In addition to the allegations above, Plaintiff further alleges that Defendant "maintained a wage practice of paying" Plaintiff and the Subclass of PCMs "without regard to the correct amount of time they work" and that Defendant "inaccurately calculated the correct time worked and consequently underpaid the actual time worked by" Plaintiff and the Subclass.  (Complaint, ¶¶ 69, 71.)  Consequently, Plaintiff alleges, he and the

Subclass of PCMs "did not receive the correct minimum wage compensation for their time worked for" Defendant. (*Id.*, ¶ 72.)

40.     Plaintiff does not, however, provide any details as to how many hours per day or per week he and the putative class members allegedly worked without compensation. Although Defendant denies Plaintiff's allegations or that he or the putative class members are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations of a "uniform" policy and practice of rounding the actual time worked and recorded, as well as Plaintiff's allegations of a policy and practice of not providing compensation for off-the-clock work, that employees worked, at minimum, two hours of unpaid time per week. *See Vasquez v. Randstad US, L.P.*, 2018 WL 327451, at *4 (N.D. Cal. Jan. 9, 2018) (finding defendants' assumption of 2.5 hours per employee per week was reasonable for minimum wage claim damages calculation where plaintiff alleged that defendants had a "policy and practice" of requiring off-the-clock work).

41.     The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years. *See* Cal. Code Civ. § Proc. 338. Plaintiff's UCL claim, however, extends the liability period of the minimum wage claim to four years. *See* Cal. Bus. & Prof. Code § 17208 ("Any action to enforce any cause of action pursuant to [the UCL] shall be commenced within four years after the cause of action accrued."). For determining the amount in controversy for Plaintiff's minimum wage claim, the UCL's four-year statute of limitations applies. Therefore, the relevant time period to calculate Plaintiff's amount in controversy for alleged unpaid minimum wages is four years prior to the date Plaintiff filed his Complaint, i.e. from June 26, 2019 to the date of trial.

42.     The minimum wage rates in California during the applicable alleged relevant time period were: $12.00 in 2019; $13.00 in 2020; $14.00 in 2021; $15.00 in 2022; $15.50 in 2023; and $16.00 in 2024.

43.     Based on a minimum of 16,548 weeks worked by former and current nonexempt employees during the time period from June 26, 2019 to February 21, 2024, and two hours of alleged unpaid work per week at the average hourly rate of $14, Plaintiff's minimum wage claim

1    places at least $463,344 in alleged damages in controversy (16,548 weeks x 2 hours x $14/hr =
2    $463,344).

3        44.    For purposes of the amount in controversy, this number must be doubled, because
4    Plaintiff claims an entitlement to liquidated damages under Cal. Labor Code § 1194.2. (FAC, ¶
5    68). Cal. Labor Code § 1194.2 provides that "[i]n any action under Section 98, 1193.6, 1194, or
6    1197.1 to recover wages because of the payment of a wage less than the minimum wage fixed by
7    an order of the commission or by statute, an employee shall be entitled to recover liquidated
8    damages in an amount equal to the wages unlawfully unpaid and interest thereon," unless the
9    employer "demonstrates to the satisfaction of the court or the Labor Commissioner that the act or
10   omission giving rise to the action was in good faith and that the employer had reasonable grounds
11   for believing that the act or omission was not a violation of any provision of the Labor Code…"
12   When the alleged liquidated damages are accounted for, Plaintiff's minimum wage claim places at
13   least $926,688 in controversy ($463,344 x 2 = $926,688).

14       45.    Moreover, the amount in controversy for Plaintiff's minimum wage claim will
15   continue to increase through the date of trial. *Chavez v. JPMorgan Chase*, 888 F.3d 413, 414-15
16   (9th Cir. 2018) ("the amount in controversy is not limited to damages incurred prior to removal—
17   for example, it is not limited to wages plaintiff-employee would have earned before removal (as
18   opposed to after removal)").

19       46.    Defendant conservatively estimates that trial is at *least* one year away. Thus, the
20   amount in controversy will increase by at least $259,168 for the minimum wage claim alone,
21   calculated based an anticipated additional 4,628 workweeks (assuming one year to trial) ([4,628
22   weeks x 2 hours x $14] x [2 (liquidated damages)]] = $259,168).

23       47.    Thus, the amount in controversy for Plaintiff's minimum wage claim is **$1,185,856**
24   ($926,688 + $259,168).

25       48.    <u>Alleged Unpaid Overtime Wages</u>: In addition to the allegations above, Plaintiff
26   further alleges that Defendant implemented "a policy and practice that failed to accurately record
27   overtime worked by" Plaintiff and the Subclass of PCMs "and denied them accurate compensation
28   for overtime worked, including, the overtime work performed in excess of eight (8) hours in a

workday, twelve (12) hours in a workday, and/or forty (40) hours in any workweek."  (Complaint, ¶ 84.)

49.    Here again, Plaintiff failed to provide any details as to how many hours per day or per week he and the putative class members allegedly worked overtime without compensation. Although Defendant denies Plaintiff's allegations or that Plaintiff or the putative class members are entitled to any relief, it is reasonable to assume, based on Plaintiff's allegations, that employees worked, at minimum, one hour of unpaid overtime per week

50.    In California, any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee.  *See* Labor Code § 510(a).

51.    The statute of limitations for recovery of unpaid wages under California Labor Code Section 1194 is three years.  *See* Cal. Code Civ. § Proc. 338.  Plaintiff's UCL claim, however, again extends the liability period of the overtime wage claim to four years.

52.    Therefore, the amount in controversy arising from the alleged failure to pay overtime wages through February 21, 2024 is approximately $471,618 (16,548 work weeks x $19.00 x 1.5 overtime premium = $471,618).

53.    Using the same calculation and assuming, at minimum, another year of litigation through trial, the overtime claim will continue to grow by an additional $128,843.52 (4,628 weeks x $19.00  x 1.5 overtime premium = $131,898).

54.    Thus, the amount in controversy for Plaintiff's overtime claim is **$603,516** ($471,618 + $131,898).

55.    <u>Unprovided Meal Periods</u>:  Plaintiff alleges that he and the Subclass of PCMs "from time to time" were unable to take all timely, uninterrupted meal periods to which they were entitled.  (Complaint, ¶ 94.)  Plaintiff further alleges that as a result of their rigorous schedules, he and the Subclass of PCMs were "from time to time" not fully relieved of duty for their meal periods.  (*Id.*)  As a result, Plaintiff alleges he and the Subclass of PCMs "forfeited meal breaks without additional compensation and in accordance with" Defendant's "strict corporate policy and

1    practice." (*Id.*)  Additionally, Plaintiff alleges that Defendant failed to compensate him and the

2    Subclass of PCMs who were not provided meal periods with premium payment at the employee's

3    regular rate of pay.  (*Id.*, ¶ 95.)

4         56.    Additionally, Plaintiff alleges that Defendant "engaged in the practice of rounding

5    the meal period times to avoid paying penalties" to Plaintiff and the PCMs.  (Complaint, ¶ 11.)

6    Plaintiff and the PCMs "therefore forfeit meal breaks without additional compensation and in

7    accordance with" Defendant's "corporate policy and practice."  (*Id.*)

8         57.    In California, an employer may not employ a non-exempt employee for a work

9    period of more than five hours per day without providing the employee with a meal period of not

10   less than 30 minutes, unless such meal period is waived under certain conditions.  *See* Cal. Labor

11   Code § 512(a).  The consequence of failing to provide a meal period under California law is that

12   the employer must pay one additional hour of premium pay at the employee's regular rate of

13   compensation for each day in which at least one meal period was not provided.  Cal. Labor Code §

14   226.7.

15        58.    In *Murphy v. Kenneth Cole Prods.,* 40 Cal. 4th 1094, 1094 (2007), the California

16   Supreme Court held that the premiums due under Cal. Labor Code § 226.7 are compensatory

17   wages for statute of limitations purposes and therefore have a three year statute of limitations

18   period.  *See* Cal. Code Civ. Proc. § 338(a).  However, Plaintiff asserts that Defendant "violated the

19   rights of the CALIFORNIA CLASS under California law by . . . Committing an act of unfair

20   competition in violation of, Cal. Bus. & Professions Code §§ 17200, *et seq.* (the 'UCL'), by

21   unlawfully unfairly and/or deceptively having in place company policies, practices and procedures

22   that failed to record and pay PLAINTIFF and the other members of the CALIFORNIA CLASS for

23   all time worked, including minimum wages owed and overtime wages owed for work performed

24   by these employees; and . . . Committing an act of unfair competition in violation of the UCL, by

25   failing to provide the PLAINTIFF and the other members of the CALIFORNIA CLASS with the

26   legally required meal and rest periods."  (Complaint, ¶ 35.)  Thus, the claimed restitution under the

27   UCL should be added to the amount in controversy for purposes of CAFA jurisdiction.

28

59.    California District Courts are split as to whether the four year statute of limitations under California Business & Professions Code § 17200 will extend the time to seek unpaid meal and rest period premiums.  Cal. Bus. & Prof. Code § 17208; *compare Horton v. NeoStrata Company Inc.,* 2017 WL 2721977 (S.D. Cal. 2017) and *Tomlinson v. Indymac Bank F.S.B.,* 359 F. Supp. 2 891, 896 (C.D. Cal. 2005) (stating that "payments under 226.7 are restitutionary because they are akin to payment of overtime wages to an employee: [B]oth are 'earned wages' and thus recoverable under the UCL.") and *Dittmar v. Costco Wholesale Corp*., 2016 WL 3387464 (S.D. Cal. 2017) *with Parson v. Golden State FC, LLC,* 2016 WL 1734010 (N.D. Cal. 2016) and *Guerrero v. Halliburton Energy Servs. Inc*., 231 F. Supp. 3d 797 (E.D. Cal. 2017)

60.    Because the jurisdictional amount in controversy is determined based on what Plaintiff alleges, not what he will ultimately recover, a four year limitations period is proper for jurisdictional purposes.  Therefore, the relevant time period to calculate Plaintiff's amount in controversy for alleged meal and rest period violations is four years prior to the date Plaintiff filed his complaint to the present, *i.e.* from June26, 2019 to the present.  (*See* Complaint, ¶ 4 [defining the class period as reaching back four years].)

61.    Based on the allegations in the Complaint of a "corporate policy and practice," and "uniform" rounding, Defendant would be justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegations.  *See Lindsey v. WC Logistics, Inc.*, 586 F. Supp. 3d 983, 994 (N.D. Cal. 2022) ("it is reasonable to assume a 100% violation rate if the complaint specifically alleges a 'uniform' practice and the plaintiff offers no competent evidence in rebuttal to a defendant's showing.") (internal quotations omitted); *see also Vikram v. First Student Management, LLC*, 2017 WL 4457575, at *4 (N.D. Cal. Oct. 6, 2017) (holding that where plaintiffs alleged that defendant required putative class members to work off the clock for each pay period, defendant may assume 100% violation rate for purposes of removal).

62.    Similarly, the court in *Oda v. Gucci Am., Inc.*, 2015 WL 93335, at *4-5 (C.D. Cal. 2015) found that allegations that a defendant "sometimes" failed to provide meal periods supported a reasonable assumption that the plaintiff is claiming at least 2.5 unprovided meal periods (and failure to pay the applicable premium) per week.  *Oda* held that "[h]ad Plaintiffs

wanted to avoid removal by limiting their recovery, they could have pled facts narrowing the scope of their claims… However, they did not." *Id.* at *5. The same is true here.

63.     Though it is entitled to assume a higher violation rate based on the allegations in the Complaint, Defendant conservatively assumes that putative class members were not provided two meal periods each workweek. Based on 16,548 workweeks, 2 alleged meal period violations per week, and at the average hourly rate of $19.00/hour, the amount in controversy for Plaintiff's meal period claim is at least $628,824 (16,548 weeks x 2 alleged violations x $19.00/hour = $628,824).

64.     Using the same calculation and assuming at least another one additional year of litigation through trial, the meal period claims will continue to grow by an additional $175,864 (4,628 weeks x 2 alleged violations x $19.00/hour = $175,864.)

65.     Thus, the meal period claim will total an estimated **$804,688** ($628,824 + $175,864).

66.     <u>Unprovided Rest Periods</u>:  Plaintiff alleges that he and the Subclass of PCMs "from time to time" were denied their rest periods. (Complaint, ¶ 98.) Plaintiff further alleges that as a result of their rigorous schedules, he and the Subclass of PCMs were "periodically" denied their proper rest periods by Defendant and Defendant's managers. (*Id.*) Additionally, Plaintiff alleges that Defendant failed to compensate him and the Subclass of PCMs who were not provided rest periods with premium payment at the employee's regular rate of pay. (*Id.*, ¶ 99.

67.     Additionally, Plaintiff alleges that Defendant's "policy restricted" Plaintiff and the PCMs "from unconstrained walks" based on Defendant's "rule which states that" Plaintiff and the PCMs "cannot leave the premises during their rest period." (Complaint, ¶ 12.

68.     California law requires that "[e]very employer shall authorize and permit all employees to take rest breaks, which insofar as practicable shall be in the middle of each work period. The authorized rest period shall be based on the total hours worked daily at the rate of ten (10) minutes nest rest time per hour (4) hours worked or major fraction thereof…" *See* Wage Order 4, § 12. California law requires employers to pay employees one additional hour of pay at the employee's regular rate of compensation for each workday that a rest period that is required to be provided is not provided. Cal. Labor Code § 226.7

69.     As discussed above, the limitations period for a claim under California Business & Professions Code § 17200 is four years, and the appropriate period to use for determining the amount in controversy.  Cal. Bus. & Prof. Code § 17208.

70.     Based on the allegations in the Complaint of a company policy restricting employees from leaving the premises during rest breaks, Defendant is justified in using a 100% violation rate in computing the amount in controversy based on the nature of Plaintiff's allegations.  *See Sanchez v. Russell Sigler, Inc.*, 2015 WL 12765359, at *6 (C.D. Cal. Apr. 28, 2015) ("Defendant's use of a 100% violation rate is proper in this case because Plaintiff's complaint alleges universal deprivation of meal and rest periods."); *Coleman v. Estes Express Lines, Inc.*, 730 F. Supp. 2d 1141, 1149 (C.D. Cal. 2010) ("courts have assumed a 100% violation rate in calculating the amount in controversy when the complaint does not allege a more precise calculation."); *Mortley v. Express Pipe & Supply Co.*, 2018 WL 708115, at *4 (C.D. Cal. 2018) (100% violation rate proper when allegations are "routine and systematic violations" of California's meal and rest period laws); *Torrez v. Freedom Mortg., Corp.*, 2017 WL 2713400, at *3-5 (C.D. Cal. June 22, 2017) (holding that where complaint alleged employer "engaged in a pattern and practice of wage abuse against its hourly-paid or non-exempt employees within the state of California," the complaint "can reasonably be interpreted to imply nearly 100% violation rates"); *Franke v. Anderson Merchandisers LLC*, 2017 WL 3224656, at *2 (C.D. Cal. July 28, 2017) ("Courts in this Circuit have generally found the amount in controversy satisfied where a defendant assumes a 100% violation rate based on allegations of a 'uniform' illegal practice – or other similar language – and where the plaintiff offers no evidence rebutting this violation rate"); *Feao v. UFP Riverside, LLC*, 2017 WL 2836207, at *5 (C.D. Cal. June 26, 2017) ("Plaintiff's allegations contain no qualifying words such as 'often' or 'sometimes' to suggest less than uniform.")  Here, Plaintiff alleges a "rule which states that" Plaintiff and the PCMs "cannot leave the premises during their rest period" thereby reasonably implementing a 100% violation rate.

71.     Based on 16,548 workweeks, five alleged rest period violations per week, and at the average hourly rate of $19.00/hour, the amount in controversy for Plaintiff's rest period claim is at least $1,572,060 (16,548 weeks x 5 alleged violations x $19.00/hour = $1,572,060).

72.     Using the same calculation and assuming another one additional year of litigation through trial, the rest period claims will continue to grow by an additional $439,660 (4,628 weeks x 5 alleged violations x $19.00/hour = $439,660.)

73.     Thus, the rest period claim will total an estimated **$2,011,720** ($1,572,060 + $439,660).

74.     <u>Failure to Provide Accurate Itemized Wage Statements</u>:  Plaintiff also alleges that Defendant failed to provide Plaintiff and the PCMs wage statements that showed "the correct gross and net wages earned."  (Complaint, ¶ 103.)  Plaintiff further alleges that the wage statements provided by Defendant to the PCMs "failed to identify the accurate total hours worked ***each pay period***."  (*Id.*) (emphasis added.)  In other words, Plaintiff alleges a 100% violation rate on his wage statement claim.

75.     Because Plaintiff's wage statement claim is derivative of Plaintiff's claims for unpaid wages and unprovided meal and rest periods, and because Plaintiff's allegations support an assumption of unpaid wages per employee each week, and an assumption of 2 unprovided meal periods and 5 unpaid rest period premiums per week, it is reasonable to assume that Plaintiff claims that every wage statement issued to the putative class was defective in some manner.  *See Wicker v. ASC Profiles LLC,* 2021 WL 1187271, at *4 (E.D. Cal., 2021) ("Therefore, because it is more likely than not that putative class members each suffered one meal and one rest break violation per week, then Defendants' 100 percent wage statement violation rate against each terminated class member is reasonably supported by the evidence."); *see also Nunes v. Home Depot U.S.A., Inc.*, 2019 WL 4316903, at *3 (E.D. Cal. 2019) ("Given the allegations, it is reasonable to assume the class members suffered at least one violation (e.g. one missed meal or rest break) per pay period.  This Court therefore finds, based on the Complaint, [defendant]'s assumption of a 100 percent violation rate [for plaintiff's wage statement claim] is reasonable."); *see also Cavada v. Inter-Cont'l Hotels Grp., Inc.*, 2019 WL 5677846, at *8 (S.D. Cal. 2019) ("Therefore, since one missed meal and rest period was reasonable, that would mean that every wage statement was inaccurate and subject to the penalties.  Accordingly, the Court concludes that a 100% violation rate is a reasonable assumption based on these claims.").  Here, Plaintiff alleges

1    that Defendant "failed to identify the accurate total hours worked *each pay period*" making it clear

2    that Plaintiff alleges a 100% violation rate.

3    76.    Under Cal. Labor Code § 226(e), an employee who suffers injury as a result of an

4    intentional and knowing failure by his or her employer to provide complete and correct wage

5    statements may recover $50 for the initial pay period in which a violation occurs and $100 for

6    each violation in a subsequent pay period, up to a maximum of $4,000.

7    77.    The statute of limitations period on Plaintiff's wage statement claim is one year.

8    Cal. Code Civ. Proc. § 340; *Trigueros v. Stanford Fed. Credit Union*, 2021 WL 2649241, at *7

9    (N.D. Cal., 2021).

10    78.    Defendant conservatively calculates the amount in controversy for wage statement

11    penalties to be **$322,200** (122 non-exempt employees x $50 for initial violation) + (3,161 pay

12    periods x $100 for subsequent violations), capped at a maximum of $4,000 per employee).

13    79.    Defendant independently determined based on its own business records that during

14    the time period June 26, 2022 (one year prior to filing of this action) through February 21, 2024,

15    there were at least 3,283 pay periods worked by the PCMs.  Defendant employed at least 122

16    PCMs who received at least one wage statement during the time period June 26, 2022 through

17    February 21, 2024, meaning that 122 wage statements are subject to the $50 penalty and the

18    remainder of the pay periods are subject to the $100 penalty provided for in Cal. Labor Code §

19    226(e)(1).  *Id.*  Plaintiff's wage statement claim therefore places at least $322,200 in controversy

20    ([122 putative class members x $50] + [[3,283 pay periods – 122 putative class members] x $100]

21    = $322,200).  Notably, there will likely be years of litigation during which this sum will continue

22    to increase with each pay period at the rate of $100 per employee (subject to the maximum).

23    80.    <u>Failure to Reimburse Business Expenses</u>:  Plaintiff alleges that Defendant's "policy

24    and practice was to not reimburse" Plaintiff and the Subclass of the PCMs "for expenses resulting

25    from using their personal cellular devices and home offices" for Defendant within the course and

26    scope of their employment.  (Complaint, ¶ 107).  Conservatively assuming that PCMs, on average,

27    spent $10 per week on the unreimbursed use of their personal cellular devices and home offices,

28    Plaintiff's claim for failure to reimburse business expenses places approximately $165,480 in

controversy ($10/week in expenses x 16,548 weeks worked by former and current nonexempt employees).

81.    Using the same calculation and assuming only another one additional year of litigation through trial, the unreimbursed business expenses claim will continue to grow by an additional $46,280 ($10/week in expenses x 4,628 weeks = $46,280).

82.    Thus, the unreimbursed business expenses claim will total an estimated **$211,760** ($165,480 + $46,280).

83.    <u>Waiting Time Penalties</u>:  Plaintiff alleges that Defendant failed to pay Plaintiff and the Subclass of the PCMs their correct wages upon separation of employment, for which Defendant is allegedly liable for waiting time penalties.  (Complaint, ¶¶ 20, 121.)

84.    Cal. Labor Code § 201(a) requires an employer to pay a discharged employee all "wages due and unpaid at the time of discharge…immediately."  Cal. Labor Code § 202(a) requires an employer to pay an employee who quits all outstanding earned wages within 72 hours of quitting, or at the time of quitting if the employee gave at least 72 hours' notice.  Cal. Labor Code § 203(a) provides that "[i]f n employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201…202…any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days."  The California Court of Appeal has interpreted Cal. Labor § 203 to provide for wages that would ordinarily be earned on 30 full workdays, even when the 30 day period includes days that the employee would not have worked had they remained employed.  *Mamika v. Barca*, 68 Cal. App. 4th 487, 489 (1998).

85.    Because Plaintiff's section 203 waiting time penalty claim is derivative of his other allegations, it is reasonable to assume that every discharged or quitting employee had at least some alleged unpaid wages and therefore would be entitled to waiting time penalties for up to 30 days. *See Amezcua v. CRST Expedited Inc.*, 2023 WL 2002085, at *7 (N.D. Cal. 2023) (derivative waiting time allegations supports 100% assumed violation rate for purposes of removal*); see also Salonga v. Aegis Senior Communities, LLC*, 2022 WL 1439914, at *4 (N.D. Cal. 2022) ("[C]ourts

in this district and others within the Ninth Circuit have accepted a 100-percent violation rate where the plaintiff has (1) tied waiting-time penalties to other claims and (2) the defendant specifically accounts for only terminated employees.").

86.    Defendant independently determined based on its own business records that during the three-year period prior to the filing of the Complaint (from June 26, 2020 to present), 66 nonexempt employees were separated from their employment with Defendant.  Therefore, the amount in controversy for Plaintiff's claim for failure to timely pay wages upon separation of employment is approximately **$300,960** (66 former employees x $19.00 per hour x 8 hours per day x 30 days).

87.    <u>Plaintiff's Claim for Attorneys' Fees</u>: For purposes of federal subject matter jurisdiction, "[t]he amount in controversy includes the amount of damages in dispute, as well as attorneys' fees, if authorized by statute or contract." *Galt G/S v. JSS Scandinavia*, 142 F.3d 1150, 1155–56 (9th Cir. 1998).  The Ninth Circuit has held "that attorneys' fees were properly included in the amount in controversy in a class action."  *Lowdermilk v. United States Bank Nat'l Assoc.*, 479 F.3d 994, 1000 (9th Cir. 2007) (abrogated on other grounds *by Standard Fire Ins. Co. v. Knowles*, 568 U.S. 558 (2013)).  In *Fritsch v. Swift Transp. Co. of Ariz., LLC*, 899 F.3d 785, 794 (9th Cir. 2018), the Ninth Circuit held that future attorneys' fees that are claimed, but not accrued at the time of removal, must be considered in the amount in controversy.  Plaintiff's causes of action permit Plaintiff to recover attorneys' fees.  *See* Cal. Lab. Code §§ 226 & 1194; *Klein v. City of Laguna Beach*, 810 F.3d 693, 701 (9th Cir. 2016) ("[F]ederal courts apply state law for attorneys' fees to state claims because of the *Erie* doctrine.").  Although not a per se rule (*see Fritsch*, 899 F.3d at 796, n.6), courts may use a 25% benchmark when calculating the attorneys' fees in controversy, including for claims arising under state law.  *Rodriguez v. Cleansource, Inc.*, 2014 WL 3818304, at *4 (S.D. Cal. 2014); *Marshall v. G2 Secure Staff, LLC*, 2014 WL 3506608 (C.D. Cal. 2014); *Jasso v. Money Mart Exp., Inc.*, 2012 WL 699465 (N.D. Cal. 2012); *see also Garibay v. Archstone Communities LLC*, 539 F. App'x 763, 764 (9th Cir. 2013); *see also Laffitte v. Robert Half Internat. Inc.*, 1 Cal. 5th 480, 483 (2016) (approving percentage of recovery measure of fees in common fund cases).

88.    Based on the reasonable estimate of the amount in controversy placed at issue in the Complaint outlined above, a 25% fee award would by approximately $**1,360,175** ($5,440,700 amount in controversy x 25% = $1,360,175).

89.    Adding the attorney's fees to the other amounts described above provides a total amount in controversy of **$6,800,875** [$1,185,856 (Minimum Wages) + $603,516 (Overtime Wages) + $804,688 (Meal Periods) + $2,011,720 (Rest Periods) + $322,200 (Wage Statements) + $211,760 (Unreimbursed Business Expenses) + $300,960 (Waiting Time Penalties) = $5,440,700 + $1,360,175 fees = $6,800,875]. Thus the amount in controversy requirement for CAFA is therefore easily satisfied.[1]

## NONE OF THE CAFA EXCEPTIONS APPLY

90.    The CAFA statute includes a number of exceptions to its grant of original jurisdiction, contained in 28 U.S.C. §§ 1332(d)(3)–(5). However, none of these exceptions are applicable here.

91.    The first is a discretionary exception under which a Court may decline to exercise jurisdiction if more than one-third of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3). The second is a mandatory exception under which a Court shall decline to exercise jurisdiction if more than two-thirds of the putative class members are citizens of the state in which the action was filed *and* the primary Defendant is a resident of that state. 28 U.S.C. § 1332(d)(3).

92.    Here, the action was filed in California and Defendant is a citizen of Colorado for purposes of removal, and not a citizen of California. Therefore, these exceptions do not apply.

93.    Finally, 28 U.S.C. § 1332(d)(5) presents two additional exceptions for defendants who are government entities or putative classes which number less than 100 in the aggregate. 28 U.S.C.§§ 1332(d)(5)(A)–(B). Given that Defendant is not a governmental entity, and the proposed class exceeds 100 members, these exceptions also do not apply.

---

[1] This amount does not take into account Plaintiff's sick pay claim. An analysis of that claim would further increase the amount in controversy.

## SUPPLEMENTAL JURISDICTION

94.    Under 28 U.S.C. § 1367(a):

> Except as provided in subsections (b) and (c) or as expressly provided otherwise by Federal statute, in any civil action of which the district courts have original jurisdiction, the district courts shall have supplemental jurisdiction over all other claims that are so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution. Such supplemental jurisdiction shall include claims that involve the joinder or intervention of additional parties.

95.    To the extent the Court concludes it lacks original jurisdiction over any of Plaintiff's claims, it should exercise supplemental jurisdiction over such claims pursuant to 28 U.S.C. § 1367(a), since each of Plaintiff's causes of action emanate from and form part of the same "case or controversy" as Plaintiff's other claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Considerations of convenience, judicial economy, and fairness to the litigants strongly favor this Court exercising jurisdiction over all claims pleaded in the Plaintiff's Complaint. *See Executive Software v. U.S. Dist. Court*, 24 F.3d 1545, 1557 (9th Cir. 1994); *see also Pinnock v. Solana Beach Do It Yourself Dog Wash, Inc.*, 2007 WL 1989635, at *3 (S.D. Cal. 2007).

96.    Here, the Court has supplemental jurisdiction over Plaintiff's non-class claims, including his claims for Discrimination and Retaliation in Violation of the Fair Employment and Housing Act (Cal. Govt. Code §§ 12940, *et seq.*) (Complaint, ¶¶ 123-134), Retaliation in Violation of California Labor Code § 1102.5 (Complaint, ¶¶ 135-145), and Wrongful Termination in Violation of Public Policy (Complaint, ¶¶ 146-151), because those claims emanate from and form part of the same "case or controversy" as Plaintiff's class claims, such that they should all be tried in one action. *See Nishimoto v. Federman-Backrach & Assoc.*, 903 F.2d 709, 714 (9th Cir. 1990). Plaintiff alleges that during his employment, he made complaints regarding Defendant's wage and hour practices, and "initiated a class action and PAGA representative lawsuit and sent this complaint to" Defendant. (Complaint, ¶¶ 123-151.) Plaintiff further alleges that "as a result of the complaints," Defendant terminated his employment. (*Id.*, ¶ 147.) Plaintiff's non-class claims and his class claims arise out of his employment with Defendant, specifically Defendant's

conduct towards Plaintiff as an employee, and his employment termination, and Plaintiff deemed them sufficiently related to file in one action.  (*See* Complaint, generally.)  Because Plaintiff's class claims and non-class claims  "arise out of a cohesive narrative: defendant's conduct towards plaintiff in his capacity as an employee," they arise from a common nucleus of operative fact sufficient to confer supplemental jurisdiction over Plaintiff's non-class claims.  *Swamy v. Title Source, Inc.*, No. C 17-01175 WHA, 2017 WL 3021042, at *4 (N.D. Cal. July 17, 2017) (citing *Mpoyo v. Litton Electronic Optical Systems*, 430 F.3d 985, 987 (9th Cir. 2005)).

97.     None of the exceptions to supplemental jurisdiction found in 28 U.S.C. § 1332(c) are applicable to this case.  Plaintiff's non-class claims do not raise novel or complex issues of State law, they do not substantially predominate over the class claims, the class claims have not been dismissed, and there are no exceptional circumstances or compelling reasons for declining jurisdiction.  The exceptions enumerated in 28 U.S.C. § 1332(c) are the exclusive grounds under which the Court may decline to exercise supplemental jurisdiction.  *Exec. Software N. Am.*, 24 F.3d at 1556.

98.     For these reasons the Court has supplemental jurisdiction over any claims pleaded by Plaintiff falling outside of the Court's original jurisdiction, including but not limited to Plaintiff's claims for Discrimination and Retaliation in Violation of FEHA; Violation of Labor Code § 1102.5; and Wrongful Termination in Violation of Public Policy.  (Complaint, ¶¶ 123-151).

**TIMELINESS OF REMOVAL**

99.     Under 28 U.S.C. § 1446(b), there are "two thirty-day windows during which a case may be removed—during the first thirty days after the defendant receives the initial pleading or during the first thirty days after the defendant receives a paper 'from which it may first be ascertained that the case is one which is or has become removable' if 'the case stated by the initial pleading is not removable.'"  *Harris v. Bankers Life & Cas. Co*., 425 F.3d 689, 692 (9th Cir. 2005).

100.    When a pleading or paper is "indeterminate," a defendant is under no duty to investigate the facts showing the basis for removal, and the first 28 U.S.C. § 1446(b) 30-day

1   window does not begin to run.  *Id.* at 692–95.  "[T]he ground for removal must be revealed

2   affirmatively in the initial pleading in order for the first thirty-day clock under § 1446(b) to

3   begin."  *Id.* at 695.  "[N]otice of removability under § 1446(b) is determined through examination

4   of the four corners of the applicable pleadings, not through subjective knowledge or a duty to

5   make further inquiry."  *Id.* at 694.  This reasoning was confirmed in *Roth v. CHA Hollywood Med.*

6   *Ctr., L.P.*, 720 F.3d 1121, 1125 (9th Cir. 2013): "Even if a defendant could have discovered

7   grounds for removability through investigation, it does not lose the right to remove because it did

8   not conduct such an investigation and then file a notice of removal within thirty days of receiving

9   the indeterminate document."

10        101.   A complaint is "indeterminate" when "it is unclear from the complaint whether the

11   case is removable, i.e., the [jurisdictional facts are] unstated or ambiguous."  *Harris*, 425 F.3d at

12   693.  Here, the Complaint does not affirmatively allege or otherwise state that the amount in

13   controversy exceeds $5,000,000.  Further, it is not discernable from the face of the Complaint that

14   more than $5,000,000 was placed in controversy.  Thus, the first 30-day window under 28 U.S.C.

15   § 1446(b) has not yet started.

16        102.   It is well-settled that a pleading or paper that discloses grounds to remove on a basis

17   other than CAFA does not start any deadline to remove under the jurisdiction conferred by CAFA.

18   *See Kenny v. Wal-Mart Stores*, 881 F.3d 786, 791 (9th Cir. 2018) ("These general removal

19   principles apply equally in the context of removals premised upon CAFA . . .'a defendant may

20   remove a case from state court within thirty days of ascertaining that the action is removable under

21   CAFA, even if an earlier pleading, document, motion, order, or other paper revealed an alternative

22   basis for federal jurisdiction.'") (quoting *Jordan v. Nationstar Mortg. LLC*, 781 F.3d 1178, 1180

23   (9th Cir. 2015)); *see also Castro v. ABM Industries, Inc.*, 2017 WL 4682816, at *3 (N.D. Cal. Oct.

24   19, 2017) (finding that defendant timely removed upon learning the amount in controversy was

25   over $5 million from plaintiff's trial plan).  *Jordan* also confirms that CAFA must be construed

26   liberally in favor of removal.  *Id.* at 1183–84.

27        103.   *Roth* holds that the two 30-day windows in 28 U.S.C. § 1446(b) are not the

28   exclusive times in which a defendant can remove.  Thus, if a defendant never receives a pleading

or other paper affirmatively disclosing the grounds for removal under CAFA, the defendant can remove under CAFA at any time. *Roth*, 720 F.3d at 1126 ("A CAFA case may be removed at any time, provided that neither of the two 30-day periods under § 1446(b)(1) and (b)(3) has been triggered."); *see also Kenny v. Wal-Mart Stores, Inc.*, 881 F.3d 786, 791 (9th Cir. 2018) ("[W]e will not 'charge defendants with notice of removability until [they have] received a paper that gives them enough information to remove'"); *see also Rea v. Michaels Stores Inc.*, 742 F.3d 1234, 1238 (9th Cir. 2014) ("[A]s long as the complaint or 'an amended pleading, motion, order or other paper' does not reveal that the case is removable, the 30-day time period never starts to run and the defendant may remove at any time.").

104.    The only papers that start the second 30-day window under 28 U.S.C. § 1446(b) are those received from other parties in the litigation. *Calkins v. Google, Inc.*, 2013 WL 3556042, at *3 (N.D. Cal. 2013) ("[T]he plain language of the statute is clear that 'other paper' refers to a document received from another person or party in connection with the litigation."); *see also Graiser v. Visionworks of Am., Inc.*, 819 F.3d 277, 284 (6th Cir. 2016) ("Every circuit to have addressed this issue has . . . adopted some form of a bright-line rule that limits the court's inquiry to the clock-triggering pleading or other paper provided *by the plaintiff* to the defendant.") (original emphasis). That a defendant can discern or has discerned removability from its own records does not begin either of the non-exclusive 30-day windows for removal. *See Roth*, 720 F.3d at 1126; *see also Jakuttis v. Allstate Indem. Co.*, 2015 WL 3442083, at *4 (C.D. Cal., 2015) ("The crux of Plaintiff's argument for remand—that Defendant could have removed earlier based on information contained in its own records—is thus contradicted by Ninth Circuit case law.") The Ninth Circuit in *Harris*, 425 F.3d at 495, adopted the following rule from the Fourth Circuit: "We will not require courts to inquire into the subjective knowledge of the defendant, an inquiry that could degenerate into a mini-trial regarding who knew what and when. Rather, we will allow the court to rely on the face of the initial pleading and on the documents *exchanged in the case by the parties* to determine when the defendant had notice of the grounds for removal, requiring that those grounds be apparent within the four corners of the initial pleading or subsequent paper." (quoting *Lovern v. GMC*, 121 F.3d 160, 162 (4th Cir. 1997)) (emphasis added).

105.     None of Plaintiff's pleadings in this action, nor any other paper which Plaintiff served or delivered to Defendant, affirmatively disclosed a ground for CAFA removal.  Thus, Defendant never received any pleading, motion, order, or other paper affirmatively disclosing that the amount in controversy in this action exceeds $5,000,000.  Accordingly, the second 30-day window under 28 U.S.C. § 1446(b) also has not yet started.

106.     For the foregoing reasons, this Notice of Removal is timely and otherwise procedurally proper.

107.     Under 28 U.S.C. § 1446(c), an action "may not be removed under subsection (b)(3) on the basis of jurisdiction conferred by section 1332 more than 1 year after commencement of the action, unless the district court finds that the plaintiff has acted in bad faith in order to prevent a defendant from removing the action."  Plaintiff's Complaint was filed on June 26, 2023, which "commenced" this action under California law.  Cal. Code Civ. Proc. § 761.010.  This notice of removal filed on March 18, 2024 is therefore timely and does not run afoul of § 1446(c).  Regardless, CAFA's removal provision, 28 U.S.C. § 1453(b), "exempts qualifying actions from the § 1446(b) prohibition of removal more than 1 year after commencement of the state court action." *Abrego v. Dow Chem. Co.*, 443 F.3d 676, 681 (9th Cir.2006) (internal quotation marks omitted)."  Thus, this notice of removal is timely.

## JOINDER

108.     Defendant is not aware of any other defendant that exists and who has been named in the Complaint or who has been served with a summons and the Complaint.  The only defendants named in Plaintiff's Complaint are Defendant and fictitiously named Doe defendants, whose presence is disregarded for purposes of removal.

## VENUE

109.     Venue is proper in this Court pursuant to 28 U.S.C. sections 84(c), and 1391.

## NOTICE TO PLAINTIFF AND STATE COURT

110.     This Notice of Removal will be promptly served on Plaintiff and filed with the Superior Court of the State of California in and for the County of San Mateo.

111.   In compliance with 28 U.S.C. section 1446(a), true and correct copies of all "process, pleadings, and orders" from the state court action served on Defendant or filed by Defendant are attached hereto as **Exhibits A through Y.**

112.   In the event this Court has any question regarding the Notice of Removal, Defendant requests that the Court issue an Order to Show Cause so that Defendant may have an opportunity to fully brief the basis for this removal and address any questions the Court may have.

WHEREFORE, having provided notice as is required by law, the above-entitled action is removed from the Superior Court for the County of San Mateo to this Court.

Dated: March 18, 2024                    SHEPPARD, MULLIN, RICHTER & HAMPTON LLP

By:     _____
                    */s/ Julia G. Remer*
                    PAUL S. COWIE
                    JULIA G. REMER

                    Attorneys for Defendant
                    GOLFTEC MANAGEMENT, LLC